## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

IN RE:

ALMA D. VILLA and                          CASE NO.:  20-10074-KKS
JAIME NAVARETTE ,

                                           CHAPTER 7

              Debtors.
_____/

MELON ACRES, INC.,                         ADV. NO.:  20-01004-KKS

         Plaintiff,

v.

ALMA D. VILLA and
JAIME NAVARETTE,

         Defendants.
_____/

## MEMORANDUM OPINION AND ORDER 1) DENYING *DEFENDANTS-DEBTORS' MOTION TO DISMISS ADVERSARY COMPLAINT AND INCORPORATED MEMORANDUM OF LAW* ("MOTION TO DISMISS," DOC. 8) AS TO COUNT I, AND 2) GRANTING THE MOTION TO DISMISS AS TO COUNT II OF COMPLAINT

THIS MATTER is before the Court on *Defendants-Debtors' Motion to Dismiss Adversary Complaint and Incorporated Memorandum of Law* ("Motion to Dismiss," Doc. 8), Plaintiff's opposition, and related

pleadings.[1] Defendants move to dismiss the Complaint on several grounds, only two of which the Court will address in this ruling.

## Facts and Procedural History

The material facts alleged in the Complaint are undisputed. Plaintiff is an Indiana corporation which trades in fresh fruit and vegetable commodities covered under the Perishable Agricultural Commodities Act, 1930 ("PACA").[2] Defendants were managing members, officers, directors or shareholders of A&J Produce, Inc. ("A&J") which bought and sold produce at wholesale.[3] Defendants are listed as principals of A&J's PACA license.[4]

Defendants filed their voluntary Chapter 7 Petition on April 7, 2020.[5] Plaintiff commenced the instant adversary proceeding by filing a two-count Complaint seeking a nondischargeable final judgment against

---

[1] *Plaintiff's Opposition to Defendant's Motion to Dismiss*, Doc. 11 ("Opposition"); *Defendants-Debtors [sic] Reply in Support of Motion to Dismiss Adversary Complaint*, Doc. 13 ("Reply"); and *Plaintiff Melon Acres Inc. [sic], Surreply to Defendants' Motion to Dismiss Adversary Complaint*, Doc. 16 ("Surreply").

[2] *Adversary Complaint to Determine Non-Dischargeability Debt [sic]* ("Complaint"), Doc. 1 ¶¶ 1–4.

[3] *Id.* ¶¶ 6, 8–9.

[4] *Id.* ¶ 6.

[5] *Id.* ¶ 48. On their voluntary Chapter 7 Petition, Defendants listed themselves as having done business under the name "A&J Produce, Inc." *Voluntary Petition for Individuals Filing for Bankruptcy*, *In re Villa*, No. 20-10074-KKS (Bankr. N.D. Fla. Apr. 7, 2020) ("Voluntary Petition"), Doc. 1. Because A&J Produce, Inc. is a separate legal entity, Defendants'/Debtors' designation of that entity as a "dba" is incorrect. A&J Produce, Inc. cannot be and has not legally been included as a debtor in Defendants' Chapter 7 case.

both Defendants in the amount of $92,506.00.[6] It is that Complaint Defendants seek to dismiss.

## DISCUSSION

## Motion to Dismiss Standard

In addressing a motion to dismiss, the Court must accept the factual allegations in the Complaint as true, and take them in the light most favorable to the claimant.[7] To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[8] This standard "requires more than labels and conclusions . . . ."[9] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[10] To determine whether to grant or deny a motion to dismiss, the Court should assume the veracity of well-pleaded facts "and then determine whether they plausibly give rise to an entitlement to relief."[11] At the motion to dismiss stage, the question before the Court is

---

[6] Complaint, Doc. 1.

[7] *Erickson v. Pardus*, 551 U.S. 89 (2007); *Carlson Corp./Southeast v. Sch. Bd.*, 778 F. Supp. 518, 519 (M.D. Fla. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

[8] Fed. R. Civ. P. 8(a)(2), made applicable by Fed. R. Bankr. P. 7008.

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[11] *Jonsson v. Stinson (In re Stinson)*, Ch. 7 Case No. 18-40628-KKS, Adv. No. 19-04006-KKS, 2019 WL 3282972, at *1 (Bankr. N.D. Fla. June 18, 2019) (quoting *Iqbal*, 556 U.S. at 679).

not what Plaintiff could ultimately prove, but "whether [Plaintiff] has adequately alleged each element of a plausible claim."[12]

Applying this analysis, the primary legal issues to be determined based on the facts alleged are: whether breach of a PACA trust can give rise to a nondischargeable debt under 11 U.S.C. § 523(a)(4); whether Defendants may be individually liable for A&J's breach of the PACA trust even though they, themselves, were not the "dealer" or "broker;" and if so, whether Defendants' conduct amounted to defalcation while acting in a fiduciary capacity such that the debt to Plaintiff may be nondischargeable pursuant to 11 U.S.C. § 523 (a)(4).[13]

### Count I – Breach of a PACA trust can give rise to, and Count I states a viable cause of action for, nondischargeability of debt under 11 U.S.C. § 523(a)(4) .

Plaintiff asserts that Defendants owe the value of the PACA assets sold to A&J and that this debt is nondischargeable under 11 U.S.C. § 523(a)(4) because of Defendants' defalcation while acting in a fiduciary

---

[12] *All Shippers, Inc. v. Choez (In re Choez)*, Ch. 7 Case No. 15-45404-ess, Adv. No. 1-16-01015-ess, 2016 WL 3244861, at *22 (Bankr. E.D.N.Y. June 3, 2016); *accord Iqbal*, 556 U.S. at 679; *TDMA, LLC v. Moulton (In re Moulton)*, Ch. 7 Case No. 19-30103-KKS, Adv. No. 19-03011-KKS, 2019 WL 9406132, at *2 (Bankr. N.D. Fla. Dec. 31, 2019).

[13] In the Complaint, Plaintiff alleges that Defendants' conduct constitutes "false representations, false pretenses, and/or actual fraud" and the debt should be nondischargeable under 11 U.S.C. § 523(a)(2)(A) but does not request a determination of nondischargeability under that section in its request for relief. Doc. 1, pp. 10–12. For that reason, the Court does not address § 523(a)(2)(A) in this ruling.

capacity.[14] In support, Plaintiff relies on caselaw originating from the Ninth Circuit Bankruptcy Appellate Panel.[15] Defendants contend that Plaintiff cannot state a claim under § 523(a)(4) because the trust created under PACA, and any associated fiduciary duties, is not the type of trust that results in nondischargeability under § 523(a)(4). Defendants rely on a case from the Bankruptcy Court for the Southern District of Florida.[16] The case law is split. Neither party cites controlling precedent on this issue.

Although the Eleventh Circuit has not yet weighed in on this specific issue, certain of its rulings provide guidance. In the seminal case of *Quaif v. Johnson* the Eleventh Circuit observed that the term "fiduciary" is "not to be construed expansively, but instead is intended to refer to 'technical trusts.'"[17] The court noted in *Quaif* that courts have struggled with the concept of "technical trust" since the Supreme Court's 1934 ruling in *Davis v. Aetna Acceptance Co.*[18] The Eleventh Circuit

---

[14] 11 U.S.C. § 523(a)(4) (2020).

[15] *In re Shipton,* No. CC-90-1366-OVP (BAP 9th Cir. 1991).

[16] *Coosemans Miami, Inc. v. Arthur (In re Arthur)*, 589 B.R. 761 (Bankr. S.D. Fla. 2018).

[17] *Quaif v. Johnson*, 4 F.3d 950, 953 (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934); *Chapman v. Forsyth*, 43 U.S. 202 (1844); *Upshur v. Briscoe*, 138 U.S. 365 (1891)).

[18] *Id.* (explaining the historical difference between and "express" and "constructive," or resulting trust: "In nineteenth century jurisprudence, the concept of 'trust' generally fell into two categories: (1) a voluntary trust, created by contract, often referred to as an 'express' trust, and (2) a trust created by operation of law, such as a constructive trust or resulting

explained that the difficulty in determining whether fiduciary duties established by statutory trusts are nondischargeable under § 523(a)(4) arises because statutory trusts exist in a gray area between express and constructive trusts: they "fit into neither of the traditional categories."[19]

In *Quaif,* the issue was whether an insurance agent's debt was nondischargeable under 11 U.S.C. § 523(a)(4) due to defalcation of fiduciary duties imposed by a Georgia statute in connection with insurance premiums.[20] The bankruptcy court ruled the debt to be nondischargeable;[21] the Eleventh Circuit affirmed, concluding that the Georgia statute in question created fiduciary duties "arguably sufficient to create a 'technical' trust."[22] Although the Eleventh Circuit in *Quaif* did not define "technical trust," it pointed out the distinction between the Georgia statute before it, which imposed fiduciary duties *before* defalcation, and other statutes that impose fiduciary duties only *after* defalcation.[23]

---

trust, which generally served as a remedy for some dereliction of duty in a confidential relationship, regardless of the intentions of the parties.") (citing *Discount Home Ctr. v. Turner (In re Turner),* 134 B.R. 646, 650 (Bankr. N.D. Okl. 1991)).

[19] *Id.*

[20] *Id.* at 952.

[21] *Id.*

[22] *Id.* at 954.

[23] *Id.; see also Fresh W. Mktg. v. Pieper (In re Pieper),* 119 B.R. 837, 840 (Bankr. M.D. Fla. 1990) (citing *Davis,* 293 U.S. at 328).

PACA imposes fiduciary duties before defalcation. Under PACA, the buyer is mandated to: hold in trust for the benefit of unpaid sellers the commodities delivered or the proceeds and products of the commodities until the unpaid sellers are paid in full; maintain trust assets so that they are freely available to satisfy obligations to unpaid sellers; preserve unpaid sellers' rights to trust benefits; collect and remit funds to unpaid sellers from the sale of produce; and not dissipate trust assets.[24] The PACA trust is created at the moment the buyer receives the perishable agricultural commodities from the seller and before any wrongdoing by the buyer/trustee.[25] The PACA trust exists separate from any act of wrongdoing.

Other statutes impose trust duties only after defalcation. For example, the Ninth Circuit Court of Appeals held that a California law requiring partners in a partnership to hold in trust any profits derived without the consent of other partners imposed trust duties only after defalcation.[26] Courts have found that still other statutes, like the one at issue in *Guerra v. Fernandez-Rocha*, do not contain trust duties at all.[27]

---

[24] 7 C.F.R. §§ 46.46(c)(2), (d)(1) (2020).

[25] *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1990).

[26] *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986).

[27] *Guerra v. Fernandez-Rocha (In re Fernandez-Rocha)*, 451 F.3d 813 (11th Cir. 2006).

In *Fernandez-Rocha,* plaintiffs with a $4.2 million medical malpractice jury verdict appealed the dismissal of their § 523(a)(4) complaint against the physician-debtor based on the physician's failure to maintain an escrow fund, malpractice coverage, or a letter of credit as required by a Florida statute.[28] The Eleventh Circuit upheld the bankruptcy and district courts, distinguishing the Florida statute at issue in *Fernandez-Rocha* from the Georgia statute in *Quaif* and holding that the Florida statute did not "create a fiduciary duty or technical trust . . . ."[29] Describing the Florida statute as "regulatory," the court in *Fernandez-Rocha* noted:

> [T]he [Florida] statute does not use the term "fiduciary capacity," nor does it require a doctor to place funds "in trust" for the benefit of third party patients. The statute does not require the physician to hold and account for the funds to third party patients. The statute does not create any property right in a doctor's escrow fund in favor of a patient.[30]

Because the Florida statute did not create a fiduciary duty in favor of the plaintiff patient, the court agreed that the defendant-debtor in *Fernandez-Rocha* had committed no defalcation sufficient to support a

---

[28] *Id.* at 814.
[29] *Id.* at 818.
[30] *Id.*

8

nondischargeability ruling under 11 U.S.C. § 523(a)(4).[31]

Courts agree that PACA creates a statutory trust but disagree on whether violation of the PACA trust equates to a defalcation while acting in a fiduciary capacity for purposes of § 523(a)(4) nondischargeability. *In re Arthur,* on which Defendants rely, focused largely on whether the trust *res* must be segregated or simply defined.[32] The distinction between defined and segregated is crucial because PACA does not require trust assets to be segregated; it provides that "[t]rust assets are to be preserved as a nonsegregated 'floating' trust. Commingling of [PACA] trust assets is contemplated."[33]

This Court has not required a trust *res* to be segregated rather than identifiable for purposes of §523(a)(4). In *In re Davis*, which involved a non-statutory trust, this Court held that an express or technical trust requires a clearly defined trust *res*, and that the bankruptcy definition of trust "may include statutory trusts if they meet the requirements for an express or technical trust."[34]

---

[31] *Id.* at 819.

[32] *See, e.g., In re Arthur,* 589 B.R. at 767.

[33] 7 C.F.R. § 46.46(b) (2020).

[34] *Rishell v. Davis (In re Davis)*, 115 B.R. 346, 350 (Bankr. N.D. Fla. 1990) (citing *In re Kelley,* 84 B.R. 225 (Bankr. M.D. Fla. 1988)); *accord Freeman v. Frick (In re Frick)*, 207 B.R. 731, 735 (Bankr. N.D. Fla. 1997) (citing *Morgan v. Musgrove (In re Musgrove)*, 187 B.R. 808 (Bankr. N.D. Ga. 1995); *Quaif,* 4 F.3d at 950; *Hayton v. Eichelberger (In re Eichelberger)*,

Other Florida bankruptcy courts have held violations of non-PACA statutory trusts nondischargeable pursuant to § 523(a)(4) without requiring the trust *res* to be segregated.[35] In *In re Menendez* the Bankruptcy Court for the Southern District of Florida held that segregation of funds is not a mandatory element for an express or technical trust and found that a trust created pursuant to a Florida statute met the requirements for an express or technical trust under § 523(a)(4).[36]

Courts faced with this issue also focus on whether a statutory trust like PACA creates an express or technical trust. A minority of bankruptcy courts, led in Florida by in *In re Arthur,* have held that PACA trusts are not express or technical trusts because PACA does not require the trust *res* to be segregated, but rather allows the trustee to use trust assets for non-trust purposes.[37] The court in *In re Arthur* concluded that because

---

100 B.R. 861 (Bankr. S.D. Tex. 1989)).

[35] *Ershowsky v. Freedman (In re Freedman)*, 431 B.R. 245, 262 (Bankr. S.D. Fla. 2010) (holding that debt for debtor's failure to fund ERISA plan was nondischargeable); *Hearn v. Goodwin (In re Goodwin)*, 355 B.R. 337, 343–44 (Bankr. M.D. Fla. 2006) (holding that debtor's failure to diversify ERISA plan's investments and using them for his own benefit constituted "fraud or defalcation" pursuant to § 523(a)(4)); *Fla. Dep't of Ins. v. Blackburn (In re Blackburn)*, 209 B.R. 4, 9 (Bankr. M.D. Fla. 1997) (citing *Kapila v. Talmo (In re Talmo),* 175 B.R. 775, 778 (Bankr. S.D. Fla. 1984)) (holding that statutes may establish express or technical trust, but not statutes that contain "broad fiduciary responsibilities," for officers of corporations).

[36] *Wright v. Menendez (In re Menendez)*, 107 B.R. 789, 791 (Bankr. S.D. Fla. 1989).

[37] *In re Arthur*, 589 B.R. at 766–68 (citing *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159

PACA does not require the trust *res* to be segregated, breach of a PACA

trust does not amount to a defalcation sufficient for nondischargeability

of debt under 11 U.S.C. § 523(a)(4).[38]

A majority of courts hold the opposite: that is, PACA trusts meet

the requirements of express or technical trusts because the trust *res* must

only be clearly defined, not segregated.[39] The majority view the existence

---

(11th Cir. 1990)) ("This Court finds that an identified trust *res* without a segregation requirement is not enough."); *Cardile Bros. Mushroom Packaging v. McCue (In re McCue)*, 324 B.R. 389, 392–93 (Bankr. M.D. Fla 2005) ("PACA clearly satisfies requirements 2 and 3 of the definition of an express or technical trust. . . . The remaining issue is whether a PACA res is a segregated trust res. . . . [T]he Court finds that it is not."); *accord CR Adventures LLC v. Hughes (In re Hughes)*, 609 B.R. 789, 801–02 (Bankr. N.D. Ill. 2019) (stating that courts that find PACA creates a technical trust are wrong because segregation of funds is a mandatory element).

[38] *In re Arthur*, 589 B.R. at 767. Taking the analysis a step further, Judge Mark in *In re Arthur* likened a PACA trust to a constructive trust because PACA does not provide for "meaningful enforcement" of the fiduciary duties until after proof of dissipation of assets. *Id.*

[39] *Id.* at 769 (recognizing that a majority of courts find that express or technical trusts require only a clearly defined trust res, not a segregated trust res); *see also Quality Foods Prods., Inc. v. Bolanos (In re Bolanos)*, No. 12 CV 7654, 2013 WL 7507846, at *3 (N.D. Ill. Sept. 16, 2013) (segregation is not a mandatory element of an express trust and the trust res in a PACA trust is explicitly defined and identifiable); *In re Snyder*, 184 B.R. at 475 (holding that PACA created fiduciary duties and stating that segregation is not a mandatory element of an express trust); *Michael Farms v. Lundgren (In re Lundgren)*, 503 B.R. 717, 721 (Bankr. W.D. Wis. 2013); *E. Armata, Inc. v. Parra (In re Parra)*, 412 B.R. 99, 105 (Bankr. E.D.N.Y. 2009) (distinguishing *In re McCue*, 324 B.R. at 389, and holding "[t]his court joins the courts finding that a trust imposed under PACA is a technical trust for purposes of satisfying the fiduciary capacity requirement under § 523(a)(4)"); *A.J. Rinella & Co. v. Bartlett (In re Bartlett)*, 397 B.R. 610, 619 (Bankr. D. Ma. 2008); *Collins Bros. Corp. v. Perrine (In re Perrine)*, Ch. 7 Case No. 05-10816-WHD, Adv. No. 05-1118, 2007 Bankr. LEXIS 3727, at *6–8 (Bankr. N.D. Ga. Sept. 27, 2007) ("Having considered both views in light of the Eleventh Circuit Court of Appeals' decision in *Quaif v. Johnson*, this Court concurs with and adopts the majority view that a debt arising from a defalcation committed while acting as a fiduciary of a trust imposed by PACA is nondischargeable under section 523(a)(4)."); *KGB Int'l, Inc. v. Watford (In re Watford)*, 374 B.R. 184, 190–91 (Bankr. M.D.N.C. 2007); *Nuchief Sales, Inc. v. Harper (In re Harper)*, 150 B.R. 416, 418 (Bankr. E.D. Tenn. 1993) (PACA statutory trust satisfies express or technical requirements of provision of Bankruptcy Code rendering nondischargeable a debt for fraud or defalcation while acting in fiduciary capacity); *Tom Lange Co. v. Stout (In*

of a segregated trust *res* as a factor that strengthens the argument for an express or technical trust, but not as a requirement.[40] In a case representative of the majority, *In re Tucker,* the Bankruptcy Court for the Northern District of Georgia incisively pointed out that the Eleventh Circuit has never held, in *Quaif* or otherwise, that segregation of a trust *res* is a *necessary* element of an express or technical trust.[41] The U.S. District Court for the District of Maryland in *In re Snyder* held similarly: that PACA is the kind of trust contemplated by § 523(a)(4), that the statute need only define the trust *res*, and that segregation of the trust *res* is not required.[42]

This Court agrees with the majority view exemplified in *Tucker* and

---

*re Stout),* 123 B.R. 412, 414 (Bankr. W.D. Okla. 1990) (debtor's failure to pay PACA supplier proceeds from the sale of produce constitutes defalcation in fiduciary capacity that results in nondischargeable debt); *Collins Bros. Corp. v. Nix (In re Nix),* Ch. 7 Case No. 91-40817-COL., Adv. Nos. 91-4040-COL, 91-4062-COL, 1992 WL 119143 (M.D. Ga. Apr. 10, 1992) (PACA trust creates a true trust and fiduciary relationship for purposes of 11 U.S.C. § 523(a)(4)); *In re Pieper,* 119 B.R. at 840 (PACA debt might be nondischargeable, provided proof of fiduciary duty and defalcation, which "need not be intentional.").

[40] *E.g., Gen. Produce v. Tucker (In re Tucker),* 2007 WL 1100482, at *4 ("Although a segregation component may strengthen the argument for an express trust, segregation is not required so long as the trust res is identifiable."); *In re McGee,* 353 F.3d 537, 540–41 (7th Cir. 2003) ("Segregation of funds, management by financial intermediaries, and recognition that the entity in control of the assets has at most 'bare' legal title to them are hallmarks of a trust."); *see also Zamora v. Jacobs (In re Jacobs),* 403 B.R. 565, 577 (Bankr. N.D. Ill. 2009) (citing *In re McGee,* 353 F.3d at 540–41) (holding that "formal separation and ownership rules" are components of a relationship amounting to a fiduciary relationship and are recognizable as hallmarks of a trust.).

[41] *In re Tucker,* 2007 WL 1100482, at *4.

[42] *In re Snyder,* 184 B.R. at 475.

12

*Snyder.* A PACA trust has a clearly defined trust *res*: "all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products . . . ."[43] PACA imposes affirmative trust duties: dealers must "maintain trust assets in a manner so that the trust assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities."[44] Under PACA, anyone "who has a fiduciary duty to collect funds resulting from the sale or consignment of produce, and remit such funds to its principal, also has the duty to preserve its principal's rights to trust benefits . . . ."[45] PACA names identifiable trust beneficiaries: unpaid suppliers or sellers of perishable agricultural commodities.[46]

PACA is closely related to the Packers and Stockyards Act of 1921

---

[43] 7 U.S.C. § 499e(c)(2) (2020). The trust *res* in a PACA trust "is specifically identified and identifiable as all perishable agricultural commodities and products and proceeds of such commodities." *In re Tucker*, 2007 WL 1100482, at *5.

[44] 7 C.F.R. § 46.46(d)(1).

[45] *Id.* § 46.46(c)(2).

[46] 7 U.S.C. § 499e(c)(2) (2020). Defendants' reliance on dicta from *Recanati v. Roberts (In re Roberts)*, 594 B.R. 484 (Bankr. N.D. Fla. 2018) is misplaced. *Roberts* did not involve a statutory trust or any trust at all. The plaintiffs in *Roberts* sought a ruling that debt arising out of non-payment of BP Oil Spill proceeds was nondischargeable under § 523(a)(4) due based on fraud and fraudulent inducement. The plaintiffs in *Roberts* tried to show that the defendants' receipt of BP Oil Spill settlement proceeds placed them in a fiduciary relationship. The court discussed fiduciary relationships in general and held "no affirmative trust duties were delineated in the Agreement or otherwise, and thus an express or technical trust does not exist." *Id.* at 494.

("PSA"),[47] which Congress amended in 1976 to create a statutory trust for the benefit of unpaid cash sellers of "livestock products."[48] Courts have held that debts due to debtors' use of funds governed by PSA for general operating expenses may be nondischargeable under 11 U.S.C. § 523(a)(4) because of the fiduciary duties imposed by that statute, provided proof of defalcation by the debtor.[49]

Whether a debt arising from failure to comply with PACA's trust obligations may be nondischargeable under § 523(a)(4) represents a tug-of-war between two competing federal statutes—the Bankruptcy Code and PACA—enacted by the same body. The Bankruptcy Code is based on equity and is intended to give debtors a fresh start.[50] PACA is intended to protect a specific category of creditor: sellers of agricultural commodities.[51] Congress first enacted PACA in 1930 without the trust portion.[52] Congress enacted 11 U.S.C. § 523(a)(4) in 1978 as part of the

---

[47] 7 U.S.C. §§ 181–217a, 221–229 (1994).

[48] *See* 7 U.S.C. § 196(b) (1994).

[49] *See Nat'l Bonding & Accident Ins. Co. v. Petersen (In re Petersen),* 51 B.R. 486 (Bankr. D. Kansas 1985); *Baugh v. Matheson (In re Matheson),* 10 B.R. 652 (Bankr. S.D. Ala. 1981).

[50] *Marrama v. Citizens Bank of Mass.*, 549 U.S. 265, 367 (2007).

[51] *Frio Ice*, 918 F.2d at 159 ("[T]he central purpose of Section 499e(c) is to ensure payment to trust beneficiaries."); *Idahoan Fresh v. Advantage Produce*, 157 F.3d 197, 202 (3d Cir. 1998) ("PACA . . . was enacted to protect unpaid suppliers of produce and alleviate the burden of nonpayment on commerce . . . .").

[52] *See Endico Potatoes, Inc. v. CIT Grp./Factoring*, 67 F.3d 1063, 1066–67 (2d Cir. 1995).

Bankruptcy Code.[53] Congress did not write limiting language into § 523(a)(4) in 1978. After Congress enacted § 523(a)(4) it amended PACA to include the "floating trust" provision "[t]o provide further protections to sellers of perishable commodities,"[54] and placing produce sellers, as trust beneficiaries, "first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy."[55] When Congress re-drafted the Bankruptcy Code in 2005, it still did not limit § 523(a)(4) to exclude obligations under PACA trusts. Nothing in § 523(a)(4) contains an exception for those performing fiduciary duties pursuant to statutory trusts or requires a trust to have a segregated *res.* Had Congress intended to exclude PACA obligations from § 523(a)(4), it has had years to do so. It has not. "Congress alone bears the responsibility for revising the statute."[56]

The Eleventh Circuit has recently ruled that where a section of the Bankruptcy Code is clear, there is no "reason to add gloss to the statute

---

[53] 11 U.S.C. § 523(a)(4) became a part of the Bankruptcy Code in 1978 when the Code was enacted. Pub. L. No. 95-598, § 523(a)(4), 92 Stat. 2549, 2591 (1978).

[54] *Overton Distributor v. Heritage Bank*, 340 F.3d 361, 364 (6th Cir. 2003) ("In 1984, Congress amended PACA to create a statutory trust . . . .").

[55] *Frio Ice*, 918 F.2d at 156 (holding that as amended, PACA "establish[ed] a nonsegregated statutory trust under which a produce dealer holds its produce-related assets as a fiduciary until full payment is made to the seller.").

[56] *In re Snyder*, 184 B.R. at 475 (citing *Morris Okun*, 814 F. Supp. at 348–49).

Congress wrote."[57] In *Whaley v. Guillen*, the Eleventh Circuit analyzed the plain text of § 1329 of the Bankruptcy Code, noting a Circuit split on whether that section requires a bankruptcy court to find a change of circumstances before modifying a confirmed Chapter 13 plan.[58] In ruling with the majority that the plain language of 11 U.S.C. § 1329 does not contain such a requirement, the Court stated:

> The requirement appears nowhere on the face of the statute, and [the majority of] courts have declined to graft onto it a threshold showing of any change in circumstances.
>
> . . .
>
> We begin—and could well end—our analysis of § 1329 with its plain text. . . . We can discern no reason to speak where Congress has not . . . .[59]
>
> As we have often observed, when "Congress knows how to say something, but chooses not to, its silence is controlling."[60]

To read § 523(a)(4) to contain an exception for fiduciary duties imposed by statutory trusts, or require a trust to have a segregated *res,* would be to graft onto the statute requirements that are not there. The

---

[57] *Whaley v. Guillen (In re Guillen)*, 972 F.3d 1221, 1224 (11th Cir. 2020).

[58] *Id. at* 1226.

[59] *Id.* at 1224, 1226 (citing *Puerto Rico v. Franklin Cal. Tax-Free,* 136 S. Ct. 1938, 1946 (2016) ("The plain text of the Bankruptcy Code begins and ends our analysis."); *see also id.* at 1226 (citing *Va. Uranium, Inc. v. Warren,* 139 S. Ct. 1894, 1900 (2019) ("[I]n any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write.").

[60] *Id.* (quoting *Myers v. TooJay's Mgmt. Corp.*, 640 F.3d 1278, 1285 (11th Cir. 2011).

plain language and Congressional intent of § 523(a)(4) of the Bankruptcy Code and PACA supports finding, as have the majority, that violation of a PACA trust gives rise to a nondischargeable debt pursuant to § 523(a)(4).

### Defendants may be individually liable for A&J's breach of the PACA trust.

An officer is personally liable for breach of fiduciary duties committed by the trustee corporation if the officer knowingly causes the misappropriation of the trust property, even if the corporate officer did not personally profit from the transaction.[61] "An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act."[62] Numerous courts have held individual officers and shareholders in a position to control payment out of funds received from the sale of perishable agricultural commodities to PACA suppliers

---

[61] *In re Baird*, 114 B.R. at 205 (citing *Capitol Indem. Co. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121, 125 (6th Cir. 1985); *Anderson v. Currin (In re Currin)*, 55 B.R. 928, 935 (Bankr. D. Colo. 1985); *Sun Life Ins. Co. of Am. v. Koszuth (In re Koszuth)*, 43 B.R. 104, 107 (Bankr. M.D. Fla. 1984)).

[62] *Morris Okun*, 814 F. Supp. at 348; *In re Perrine*, 2007 Bankr. LEXIS 3727, at *4; *In re Tucker*, 2007 WL 1100482, at *7 (citing *Weis-Buy Servs. v. Paglia*, 411 F.3d 415, 421 (3d Cir. 2005)); *In re Baird*, 114 B.R. at 204; *see also Red's Mkt. v. Cape Canaveral Cruise Line*, 181 F. Supp. 2d 1339, 1344–45 (M.D. Fla. 2002), *aff'd sub nom. Red's Mkt. v. Cape Canaveral,* 48 F. App'x 328 (11th Cir. 2002) (unpublished).

personally liable for the debt.[63]

Plaintiff has adequately alleged that Defendants (1) were officers, managers, or shareholders of A&J; (2) had control or were in a position to control the PACA trust assets; (3) possessed actual or constructive knowledge of A&J's insolvency; and (4) failed to voluntarily cease A&J's business operations when A&J no longer had the ability to pay its PACA suppliers. Although Plaintiff imprecisely refers to Defendants, as opposed to A&J, "as fiduciaries and trustees of the PACA trust,"[64] Plaintiff's allegations are sufficient to put Defendants on notice that they may be liable for A&J's breach of fiduciary duties. Whether Plaintiff can prove its allegations is an issue of fact for proof at trial.

### Defendants' conduct may amount to defalcation while acting in a fiduciary capacity.

Defalcation under § 523(a)(4) requires "an intentional wrong" when "the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct . . . ."[65] This includes conduct the fiduciary knows is wrong or reckless.[66] After summarizing the history of the term

---

[63] *See In re Guarracino*, 575 B.R. at 308 (citing numerous cases, including from the 1st, 2nd, 3rd, 5th, 7th and 9th Circuits); *In re Lundgren,* 503 B.R. at 717.
[64] Doc. 1, ¶¶ 30–32; 34–36; 43–45; 50–53; 56; 61; 63–66; 68; *see also* Docs. 11, 16.
[65] *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273–74 (2013).
[66] *Id.*

"defalcation" as an exception to bankruptcy discharge since 1867 the

Supreme Court defined defalcation for purposes of § 523(a)(4) as follows:

> Where actual knowledge of wrongdoing is lacking, we consider
> conduct as equivalent if the fiduciary "consciously disregards"
> (or is willfully blind to) "a substantial and unjustifiable risk"
> that his conduct will turn out to violate a fiduciary duty. [67]

To be excepted from discharge the conduct must occur after the fiduciary

relationship is established.[68]

It is appropriate to deny a motion to dismiss where a party has

alleged sufficient facts to establish that defalcation occurred after a

fiduciary relationship was created.[69] Upon doing so, a court leaves for a

later date the factual issue of whether the defendant's conduct was

intentional.[70] Here, Plaintiff alleges that Defendants' fiduciary duties

arose before they, with actual and constructive knowledge of A&J's

insolvency: did not cease A&J's business operations or cause it to stop

ordering and accepting agricultural commodities; failed to pay Plaintiff

---

[67] *Id.* at 274.

[68] *Great Am. Ins. Co. v. Brandt (In re Brandt)*, 594 B.R. 829, 834 (Bankr. S.D. Fla. 2019) (citing *Quaif*, 4 F.3d at 954).

[69] *Id.; see also In re Nix,* 1992 WL 119143, at *4 (affirming bankruptcy court's denial of motion to dismiss, stating that the Eleventh "Circuit Court stated 'Congress has provided the unpaid sellers of perishable agricultural commodities with the benefits of a statutory trust. Absent specific instructions to the contrary, Congress must have intended for such a trust to operate according to the settled principles of trust law.' 'Settled principles of trust law' would dictate that the PACA trust creates a fiduciary relationship for purposes of Section 523(a)(4)." (citations omitted) (quoting *C.H. Robinson Co.,* 952 F.2d at 1316)).

[70] *In re Brandt*, 594 B.R. at 833–34.

promptly and in full for produce delivered, despite Plaintiff's repeated demands; failed to preserve sufficient funds to fully satisfy Plaintiff's qualified PACA claims; and failed to ensure funds were freely available to satisfy outstanding obligations to Plaintiff.

PACA is a remedial statute that should be construed liberally in order to protect creditors.[71] Count I of Plaintiff's Complaint contains allegations sufficient to survive the Motion to Dismiss.

### Count II does not adequately state a cause of action for "Interference with Receipt of Trust Assets"

Plaintiff reasserts all paragraphs of the Complaint that precede Count II without making any distinction as to what facts pertain to Count II and what facts do not. This is a type of shotgun pleading disapproved by this and other courts in the Eleventh Circuit.[72]

Improper pleading issues aside, Plaintiff styles Count II as "Interference with Receipt of Trust Assets." Despite its heading, Count II appears to be a mere replication of the defalcation or breach of fiduciary duty allegations in Count I, albeit reworded. In Count II, Plaintiff alleges

---

[71] *In re Nix,* 1992 WL 119143, at *6, and cases cited therein.
[72] *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–96 (11th Cir. 2018); *In re Moulton*, 2019 WL 9406132, at *6–9; *In re Stinson*, 2019 WL 3282972, at *3–4; *Se. Funding Partners, LLLP v. Williams (In re Williams)*, Ch. 7 Case No. 17-10190-KKS, Adv. No. 18-01002-KKS, 2018 WL 7575597, at *7–8 (Bankr. N.D. Fla. Dec. 17, 2018).

that Defendants "breached the PACA trust by, *inter alia,* transferring trust assets from [A&J] to non-PACA trust beneficiaries . . . (e.g., the Debtors themselves and other non-Produce seller creditors) . . . ."[73] Plaintiff then alleges that by transferring the PACA trust assets Defendants damaged them and/or interfered with their delivery to Plaintiff.[74] Plaintiff concludes by repeating the allegations in Count I that Defendants breached their fiduciary duties by failing to preserve and maintain the trust assets for the benefit of PACA trust beneficiaries.

Plaintiff makes no distinction in Count II between breach of a fiduciary duty and "interference with receipt of trust assets." Further, Plaintiff provides no citation of authority as grounds for the latter. Count II does not clearly articulate a separate cause of action for interference with receipt of trust assets. Defendants' Motion to Dismiss is due to be granted as to Count II of the Complaint.

## CONCLUSION

The foremost issue raised by the Motion to Dismiss, whether breach of a statutory PACA trust can give rise to a nondischargeable debt for defalcation while acting in a fiduciary capacity under

---

[73] Doc. 1, ¶¶ 74–76.
[74] *Id.* at ¶ 77.

11 U.S.C. § 523(a)(4), is an issue of first impression in this Court. After careful consideration of the parties' legal arguments, and the majority and minority views, including decisions of sister bankruptcy courts in Florida in light of the Eleventh Circuit's decision in *Quaif v. Johnson*, the Court holds in the affirmative: a party can state an actionable cause of action for breach of a PACA trust under 11 U.S.C. § 523(a)(4).

## ORDER

For the reasons stated, it is ORDERED:

1. The Motion to Dismiss is DENIED as to Count I.

2. The Motion to Dismiss is GRANTED as to Count II, without prejudice. Plaintiff has twenty-one (21) days from the date of this Order within which to file and serve an amended complaint.

3. Defendants have fourteen (14) days from Plaintiff's service of an amended complaint within which to file a responsive pleading.

DONE and ORDERED on    January 28, 2021            .

KAREN K. SPECIE
Chief U.S. Bankruptcy Judge

Attorney for Defendants is directed to serve a copy of this Order on interested parties and file Proof of Service within three (3) days of entry of this Order.

22